IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **DENNIS SCRUGGS, # 504118,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **CASE NO. 3:13-cv-00278** |
| v. | ) | **JUDGE CAMPBELL** |
| | ) | **JUDGE KNOWLES** |
| | ) | |
| **MICHAEL BRYSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon a Motion to Dismiss, filed by Defendant Michael Bryson, the only remaining Defendant in this action,[1] pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Docket No. 19.  In support of his Motion, Defendant has filed an accompanying Memorandum of Law.  Docket No. 20.

Plaintiff, *pro se*, has filed a "Response to States [*sic*] Motion to Dismiss."  Docket No. 23.

Plaintiff, an inmate of the Tennessee Department of Correction (TDOC) at Charles Bass Correctional Complex (CBCX), filed this action, *pro se*, *in forma pauperis*, pursuant to 42

---

[1] Plaintiff initially also sued Warden Qualls and TDOC, but those claims were dismissed in Judge Campbell's March 28, 2013 Order. Docket No. 6.

1

U.S.C. § 1983, alleging that Defendant violated his constitutional rights. Docket No. 1.[2]

Specifically, Plaintiff avers as follows:

> On or around September or October of 2012, I was in Guild #5 at Charles Bass Correctional Complex. I was doing my job as a Rockman (Industrial Cleaner[)]. Mr. Bryson, the first shift officer, told several inmates that I was snitching on them, and two of the inmates pulled me into my cell to beat me up. I defended myself verbally and no assault took place, but I was terrified. I filed a grievance on Mr. Bryson and as a result of that grievance he was moved to another guild. Unfortunately, this was only temporary and [M]r. Bryson was soon moved back to Guild #5. By that time I had been given another job and I wasn't around Mr. Bryson or the guild during the day. The trouble with Mr. Bryson started again when another inmate once again came to me and told me that Mr. Bryson was telling inmates that I was snitching on them. I spoke with Cpl. Hall and Sgt. Barbee about this situation and Mr. Bryson cooled out for a while. I was soon given a job at the state capital and rarely had any dealings with Mr. Bryson. Do [*sic*] to Mr. Bryson's actions and the intimidation I received from the other inmates, I would stay in my cell when at the guild. I was scared most of the time and stayed stressed out. On March 4, 2013, I spoke with Mr. Bryson about a problem I was having with another inmate and he told me that he couldn't help me because no one would listen to him. He said I needed to write a letter to Unit Manager Mike Johnson, which I did. I did not sign the letter as Mr. Bryson told me not to, that way no one would know that I had done it. On March14, 2013, around 7 a.m. an inmate told me that Mr. Bryson told him and other inmates that I was the one who wrote the letter. I immediately asked Mr. Bryson for a grievance form and he stated, "What for? Are you going to try to have me moved again?" He gave it to me, and I started filling it out and placed it in the grievance box as soon as I came in from work. This was about 5:30 p.m. At about 8:30 p.m. I was served with a write-up for threatening an employee. I believe this is in

---

[2] Plaintiff has filed two Amended Complaints in this action. Docket Nos. 10, 13. Plaintiff explicitly states, "This amended petition is not to replace the petitioner's original complaint, but to provide additional information." *Id.* Plaintiff's first Amended Complaint levies no new allegations against Defendant. Docket No. 10. Plaintiff simply reiterates the allegations of his original Complaint, and notes that he "is lucky he never got hurt." *Id.* Plaintiff's second Amended Complaint is a letter from a fellow inmate. Docket No. 13.

2

retaliation for filing the grievance. . . .

*Id.*

Plaintiff seeks the termination of Defendant and compensatory damages in the amount of $300,000. Docket No. 1 at 5.

Defendant filed the instant Motion and accompanying Memorandum of Law on June 13, 2013. Docket Nos. 19, 20. Defendant argues that this action should be dismissed because: 1) pursuant to *Heck v. Humphrey* and *Edwards v. Balisok*, Plaintiff fails to state a cognizable §1983 claim; 2) Plaintiff fails to establish the requisite elements of a retaliation claim; 3) Plaintiff fails in his claim for damages because he neither alleges nor shows any serious physical injury as required by the §803(d) of the PRLA; and 4) Plaintiff has not demonstrated that he has exhausted his administrative remedies. *Id.*

Plaintiff responds that Defendant's telling other inmates that he was a snitch constitutes cruel and unusual punishment, in violation of his Eighth Amendment rights, because it put Plaintiff "within harms way of other inmates." Docket No. 23 at 1-2. Plaintiff also responds that Defendant retaliated against him because: 1) he filed a grievance against Defendant, in accordance with administrative instruction; 2) Defendant was aware of the filing; 3) Defendant was removed from Plaintiff's unit for approximately three months; 4) after Defendant returned to Plaintiff's unit, he began looking for ways to get back at Plaintiff; 5) Plaintiff filed another grievance, of which Defendant was aware, and 6) shortly thereafter, Plaintiff was served with a write-up for threatening an employee. *Id.* at 2. Plaintiff contends that the write-up was in retaliation for his grievance, in violation of TDOC Policy 501.01 (V) which states "[t]he TDOC shall ensure that every inmate has the right to utilize the grievance procedure without fear of

3

reprisal." *Id.*, *quoting* Tennessee Department of Corrections Policy 501.01(V).

For the reasons discussed below, the undersigned recommends that Defendant's Motion to Dismiss be GRANTED IN PART, and DENIED IN PART.

### III. Analysis

**A. Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations

4

> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of the cause of action,
> supported by mere conclusory statements, do not suffice . . . . Rule
> 8 marks a notable and generous departure from the hyper-
> technical, code-pleading regime of a prior error, but it does not
> unlock the doors of discovery for plaintiff armed with nothing
> more than conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss . . . .
> Determining whether a complaint states a plausible claim for relief
> will, as the Court of Appeals observed, be a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense. . . . But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged - but it has not "show[n]" -
> "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

### B.  42 U.S.C. § 1983

Plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733

5

(1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941).

**C. The Case at Bar**

As noted, Plaintiff avers that Defendant placed him in a dangerous situation by having him labeled a "snitch," and that having him incarcerated while being labeled a "snitch" constitutes cruel and unusual punishment in violation of his Eighth Amendment rights. *See* Docket Nos. 1, 23. Plaintiff asserts that he filed a grievance against Defendant, resulting in Defendant's transfer out of his unit for three months, and that Defendant had been looking for a way to retaliate against Plaintiff ever since he returned. *Id.* Plaintiff contends that, approximately three hours after he filed another grievance against Defendant, he received a disciplinary write-up for "threatening an employee." *Id.* Plaintiff argues that Defendant had this disciplinary write-up issued based upon a personal bias, in retaliation for his filing a grievance against him, and not because Plaintiff violated TDOC rules. *Id.* Plaintiff essentially argues that his filing of grievances is protected First Amendment conduct because TDOC Policy 501.01 (V) states, "[t]he TDOC shall ensure that every inmate has the right to utilize the grievance procedure without fear of reprisal." *Id.*, *quoting* Tennessee Department of Corrections Policy 501.01(V).

With regard to Defendant's contention that this action should be dismissed because Plaintiff's §1983 claim cannot survive *Heck* and *Edwards*, Plaintiff alleges that he *received* a disciplinary write-up, but there is no indication that Plaintiff's write-up has resulted in a

6

Case 3:13-cv-00278 Document 25 Filed 07/19/13 Page 6 of 10 PageID #: 91

disciplinary conviction that would trigger either *Heck* or *Edwards*. Accordingly, Defendant cannot prevail on this ground.

Defendant next argues that this action should be dismissed because Plaintiff cannot satisfy the requisite elements of a retaliation claim. Docket No. 20. Specifically, Defendant contends that Plaintiff cannot satisfy the causation requirement for retaliation, "because the finding that [the inmate] was guilty of the disciplinary offense satisfies the defendants' burden of showing that they would have brought the conduct charges against [the inmate] regardless of his prior grievances." *Id., quoting Hynes v. Squillace*, 143 F.3d 653, 657 (2nd Cir. 1998). As noted above, however, there is nothing in the record to indicate that Plaintiff has had a disciplinary hearing or been convicted of a disciplinary offense in connection with the disciplinary write-up at the heart of this case. Plaintiff's retaliation claim will be analyzed in greater detail below, but, for the reasons already discussed, Defendant's causation argument is unavailing.

Defendant also argues that this action should be dismissed because Plaintiff has failed to exhaust his administrative remedies, but Plaintiff contends that he filed a grievance against Defendant resulting in Defendant's transfer out of his unit for three months, and that he filed another grievance against Defendant and three hours later received a disciplinary write-up. Taking these allegations as true, Plaintiff has filed two grievances, and Defendant cannot prevail on this ground.

Plaintiff avers that Defendant placed him in a dangerous situation by having him labeled a "snitch," which, according to Plaintiff, constitutes cruel and unusual punishment in violation of the Eighth Amendment. Labeling Plaintiff a "snitch," however, simply does not rise to the level of a constitutional violation (*see, e.g., Dyer v. Hardwick*, 2011 WL 4036681 E.D. Mich.), and

7

Plaintiff has failed to allege or demonstrate that he has suffered any physical injury, as required by the Prison Litigation Reform Act. *Id.* at 7, *citing* 42 U.S.C. § 1997e(e). With regard to any alleged injury beyond *receiving* a disciplinary write-up, Plaintiff states:

> [T]wo of the inmates pulled me into my cell to beat me up. I defended myself verbally and no assault took place, but I was terrified. . . . Do [*sic*] to Mr. Bryson's actions and the intimidation I received from the other inmates, I would stay in my cell when at the guild. I was scared most of the time and stayed stressed out.

Docket No. 1.

As can be seen, Plaintiff acknowledges that no assault took place. *Id.* Although Plaintiff alleges that he was "terrified," "scared most of the time," and "stayed stressed out," fear and stress, alone, are insufficient for recovery in Eighth Amendment claims under 42 U.S.C. § 1997e(e). 42 U.S.C. § 1997e(e) explicitly states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Because Plaintiff has neither alleged nor demonstrated that he suffered any physical injury as a result of Defendant's actions, Plaintiff has failed to state a viable Eighth Amendment claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). Accordingly, Defendant's Motion to Dismiss should be granted with regard to Plaintiff's Eighth Amendment claims.

Inasmuch as Plaintiff argues that his filing of grievances is protected by the First Amendment, Plaintiff is correct that retaliation for filing grievances could violate his First Amendment rights, as well as TDOC Policy 501.01 (V), which states, "[t]he TDOC shall ensure that every inmate has the right to utilize the grievance procedure without fear of reprisal." It is

8

well-settled that actions, which standing alone do not violate the Constitution, may become violative if motivated in substantial part by a desire to punish an individual for exercising a constitutional right. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)(citations omitted). Retaliation claims, in general, require that the plaintiff engaged in protected conduct, the defendant was aware that the plaintiff had engaged in that conduct, the defendant took adverse action against the plaintiff, and the adverse action was taken, at least in part, because of the protected conduct. *Id.* at 386-87.

In the instant case, Plaintiff engaged in protected conduct when he filed grievances. *See, e.g.,* TDOC Policy 501.01(V); *Id.* at 391. Secondly, Plaintiff contends that Defendant knew that he had filed grievances against him because Defendant was transferred out of Plaintiff's wing after the filing of the first grievance against him and because Plaintiff specifically asked Defendant for the second grievance form and then filed it. Taking these allegations as true, Defendant was aware that Plaintiff had engaged in protected conduct. Thirdly, Plaintiff contends that Defendant had a disciplinary write-up issued against him. Taking this allegation as true, Defendant took adverse action against Plaintiff. Finally, Plaintiff contends that Defendant had the disciplinary write-up issued in direct retaliation for Plaintiff's filing the grievances against him. Again, taking this allegation as true, Defendant's adverse action was taken, at least in part, because of Plaintiff's protected filing of grievances. Accordingly, at this stage of the litigation, Plaintiff has sufficiently stated a First Amendment retaliation claim, and that claim should proceed.

### III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion to

9

Dismiss be GRANTED IN PART and DENIED IN PART.  Specifically, the undersigned recommends that Defendant's Motion to Dismiss be GRANTED with respect to Plaintiff's Eighth Amendment claims, but DENIED with respect to Plaintiff's First Amendment retaliation claims.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

10